Filed 3/27/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>  Defendant and Appellant. | A172657<br><br>(Contra Costa County<br>Super. Ct. No. J23-00584) |

J.H. pled no contest to a charge of assault with a deadly weapon with a great bodily injury enhancement, and he was sentenced to a baseline confinement term of four years.  Based on his conduct post-disposition, the probation department recommended a 26-day reduction in J.H.'s baseline term.  At the six-month review hearing, the court admitted as evidence a victim impact statement and declined to reduce J.H.'s baseline term.

On appeal, J.H. contends the court's admission of that impact statement was error.  We shall affirm the order as the court properly admitted the victim impact statement and limited its consideration of the victim impact statement to those components relevant to J.H.'s rehabilitation.

BACKGROUND

The facts surrounding the underlying offense are set forth in greater detail in our unpublished opinion, *In re J.H.* (July 15, 2025, A171165) (*In re J.H.*), and we summarize details relevant to the pending appeal here.

"The Contra Costa County District Attorney filed an amended juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) alleging J.H. committed attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 1), assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (c); count 2), resisting a peace officer (Pen. Code, § 69; count 3), carrying a dirk or dagger (Pen. Code, § 21310; count 4), and assault with a deadly weapon, to wit, a knife (Pen. Code, § 245, subd. (a)(1); count 5). The petition further alleged J.H. personally used a deadly and dangerous weapon during the commission of the attempted murder (Pen. Code, § 12022, subd. (b)(1)) and personally inflicted great bodily injury during the commission of the assault (Pen. Code, §§ 969, subd. (f), 12022.7, subd. (a))." (*In re J.H.*, *supra*, A171165.) These charges arose from an incident in which Officer Devin Hidalgo attempted to detain J.H. by grabbing him from behind, and J.H. turned and stabbed the officer with a knife in the neck and head area. (*Ibid.*)

"J.H. pled no contest to count 5 (assault with a deadly weapon, a knife) and admitted the great bodily injury enhancement." (*In re J.H.*, *supra*, A171165.) At the subsequent dispositional hearing, the court stated it considered the probation report, the memorandum submitted by defense counsel including a social worker's report from the public defender's office, J.H.'s apology letter, a letter submitted by Wayfinder Family Services, and Officer Hidalgo's victim impact statement. Officer Hidalgo also read his victim impact statement to the court, and J.H. again provided an apology for the incident. (*Ibid.*) Based on the severity of the offense, the court imposed a

baseline confinement term of four years, with a maximum confinement term of five years, three months, and 17 days.  The court also required J.H. and his legal guardian(s) to "participate in any program of guidance . . . and counseling as directed by the probation officer."  (*Ibid.*)

J.H. appealed the sentence, arguing (1) the court abused its discretion in setting a baseline term of four years, and (2) the probation condition regarding any unspecified "program of guidance" constituted an impermissible delegation of judicial authority.  We affirmed the baseline term but reversed and remanded the probation condition.  We instructed the court "to modify the condition" by "specify[ing] what type of rehabilitative program(s) the court directs J.H. to undergo, if any."  (*In re J.H.*, *supra*, A171165.)

The juvenile court subsequently conducted a six-month review hearing pursuant to Welfare and Institutions Code[1] section 875, subdivision (e).  The probation report submitted to the court noted J.H. was actively participating in programming, therapy, and school, but it reported a few instances of J.H. being disrespectful and failing to follow staff directives.  The report also noted probation received a victim impact statement from Officer Hidalgo, and it would provide the statement to all parties prior to the hearing.  Based on J.H.'s performance and his interview with the Briones Youth Academy Review Board, the review board recommended a 26-day baseline reduction in J.H.'s sentence.  Both probation and the district attorney adopted the recommendation.

The court stated it had reviewed the probation report, the victim impact statement, a "packet of information" from J.H.'s counsel, a letter from

---

[1] All further statutory references are to the Welfare and Institutions Code.

3

J.H., and "baseline modification criteria logs." J.H.'s counsel objected to Officer Hidalgo's submission of a victim impact statement and the court's consideration of that statement. Counsel argued the focus of the hearing was J.H.'s progress, Officer Hidalgo had provided an extensive victim impact statement at the disposition hearing, and no further victim impact statement was appropriate. Counsel alternatively argued that, to the extent the court allowed the statement, it "should be limited to the victim essentially sharing . . . the impact that the incident had on them and that that should be conveyed through probation and written in their report." Counsel stated section 875 did not authorize the court to consider the victim's "desires" as to J.H.'s punishment and consequences.

The court rejected counsel's objection to the victim impact statement as it was unaware of any authority prohibiting it from considering "how the victim is doing and the impact of the offense here." However, the court acknowledged that six-month review hearings are "supposed to solely be focused on the progress of the minor." The court explained it did not find the victim impact statement and purpose of the review hearing in conflict: "In this Court's opinion, the progress of the minor does have to do with how he empathizes with the victim. So, your continued feelings about how things are going and the victim's recovery is important for [J.H.] to know. So, that's why I think it's important that the Court consider [the victim impact statement] here today and that [J.H.] be aware that the officer is continuing to be impacted by the choices that [he] made. Understanding the consequences of [J.H.'s] choices is a really big part of [his] rehabilitation, so that's why it's important for [J.H.] and this Court to hear from the victim and the impact that he's continuing to feel every day."

The court identified six instances of behavioral issues flagged in the probation report, many of which involved defying authority. The court expressed its disappointment, stating it did not see J.H. "trying to change [his] behavior and what led to [him] getting to here." The court concluded there was insufficient progress to justify the sentence modification requested by probation and maintained the four-year baseline. J.H. appealed.

## DISCUSSION

J.H. raises one issue on appeal—whether the trial court erred in admitting and considering the victim impact statement. We conclude it did not.

## I. Relevant Legal Principles

### A. The Victims' Bill of Rights Act of 2008

"The Victims' Bill of Rights Act of 2008, also known as Marsy's Law, was adopted by a voter initiative, Proposition 9 in 2008."[2] (*People v. Hannon* (2016) 5 Cal.App.5th 94, 99.) The initiative responded to perceived deficiencies in the criminal justice system's treatment of victims and sought to remedy those shortcomings by enshrining victims' rights within the Constitution. (*Ibid.*) To that end, the initiative amended article I, section 28 of the California Constitution to enumerate 17 specific rights afforded to victims "[i]n order to preserve and protect [their] rights to justice and due process." (Cal. Const., art. I, § 28, subd. (b).) As the court in *People v. Hannon* observed, these provisions embody a determination that ensuring respect, dignity, and meaningful participation for victims is " 'a matter of

---

[2] This initiative amended a prior iteration of the Victims' Bill of Rights, created in 1982 when voters passed Proposition 8. (*People v. Brooks* (2018) 23 Cal.App.5th 932, 940 (*Brooks*).)

high public importance,' " essential to both public safety and the fair administration of justice.  (*Hannon*, at p. 99.)

Among these constitutional guarantees, article I, section 28, subdivision (b)(8) confers on victims the right "[t]o be heard, upon request, at any proceeding, including any delinquency proceeding, involving a post-arrest release decision, plea, sentencing, post-conviction release decision, or any proceeding in which a right of the victim is at issue."

The Victims' Bill of Rights mirrors the progression of victims' rights established by the Legislature in connection with delinquency proceedings. Prior to 1997, section 656.2 directed probation officers to obtain a victim statement and include it in their social study submitted to the court for the disposition hearing.  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1195 (1997–1998 Reg. Sess.) as amended Sept. 8, 1997, p. 2.) In 1997, section 656.2 was amended to require probation officers to generally inform victims of their rights "to submit a victim impact statement." (Stats. 1997, ch. 910, § 1, p. 6526; Sen. Bill No. 1195 (1997–1998 Reg. Sess.).) That provision was then amended two years later to add a new opening sentence: "Notwithstanding any other provision of law, a victim shall have the right to present a victim impact statement *in all juvenile court hearings* concerning petitions filed pursuant to Section 602 alleging the commission of any criminal offense."  (Stats. 1999, ch. 996, § 17.5, p. 7563, italics added; Sen. Bill No. 334 (1999–2000 Reg. Sess.).)  The Legislature explained that while victims currently "must be informed of their rights to submit a victim impact statement to the court," the revisions "would expand this provision." (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 334 (1999–2000 Reg. Sess.) as amended Sept. 9, 1999, pp. 3–4.)  In other words, the expansion clarified that victims were entitled to provide a statement "in all juvenile

6

court hearings." Following passage of the Victims' Bill of Rights in 2008, the Legislature again amended section 656.2 but without meaningful revision to this statutory language.[3] (Stats. 2013, ch. 28, § 91, eff. June 27, 2013; Sen. Bill No. 71 (2013–2014 Reg. Sess.).)

### B. Welfare and Institutions Code Section 875

" 'Until recently, the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) was "the state's most restrictive placement for its most severe juvenile offenders . . . ." ' [Citation.] In 2020 and 2021 the Legislature passed a series of bills aimed at '[j]uvenile justice realignment,' with the purpose 'to ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment' and 'to establish a separate dispositional track for higher-need youth.' " (*In re Jose R.* (2024) 102 Cal.App.5th 839, 845.)

As part of that realignment, the Legislature modified both the facilities housing juvenile offenders and their form of sentencing. (§§ 736.5, subd. (a), 731, subd. (b).) In connection with sentencing, section 875, subdivision (b)(1) requires courts to "set a baseline term of confinement" that "shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge . . . ." However,

---

[3] The current version of section 656.2, subdivision (a)(1) reads: "Notwithstanding any other law, a victim shall have the right to present a victim impact statement in all juvenile court hearings concerning petitions filed pursuant to Section 602 alleging the commission of any criminal offense. In any case in which a minor is alleged to have committed a criminal offense, the probation officer shall inform the victim of the rights of victims to submit a victim impact statement. If the victim exercises the right to submit a victim impact statement to the probation officer, the probation officer is encouraged to include the statement in his or her social study submitted to the court pursuant to Section 706 and, if applicable, in his or her report submitted to the court pursuant to Section 707."

courts may reduce this baseline term or assign a minor to a less restrictive program during progress review hearings that must be held at least once every six months.  (§ 875, subds. (b)(1) & (e).)  In evaluating whether a baseline term should be modified, courts must "evaluate the ward's progress in relation to the rehabilitation plan" by considering "the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's progress."  (*Id.*, subd. (e)(1)(A).)

### C.  Standard of Review

" 'The interpretation of constitutional or statutory provisions presents a legal question, which we decide de novo.'  [Citation.]  'The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue.  [Citations.]  When the constitutional provision was enacted by initiative, the intent of the voters is the paramount consideration.  [Citation.]  To determine the voters' intent, courts look first to the constitutional text, giving words their ordinary meanings.  [Citations.]  But where a provision in the Constitution is ambiguous, a court ordinarily must adopt that interpretation which carries out the intent and objective of the drafters of the provision and the people by whose vote it was enacted.  [Citation.]  New provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for.' "  (*Zolly v. City of Oakland* (2020) 47 Cal.App.5th 73, 86.)

## II.  The Court Properly Admitted the Victim Impact Statement

The question whether the juvenile court erred in permitting Officer Hidalgo to submit a victim impact statement is straightforward.  Article I, section 28, subdivision (b)(8) of the California Constitution guarantees victims the right "[t]o be heard, upon request, at . . . any delinquency

8

proceeding, involving . . . sentencing" or a "post-conviction release decision." The proceeding at issue falls squarely within that provision: it was a "delinquency proceeding" in which J.H.'s sentence—i.e., whether it should be reduced by 26 days—was under consideration. On these facts, article I, section 28, subdivision (b)(8) obligated the juvenile court to grant the victim's request to file a victim impact statement.

The Welfare and Institutions Code compels a similar conclusion. Section 656.2 provides that "a victim shall have the right to present a victim impact statement in all juvenile court hearings concerning petitions filed pursuant to Section 602 alleging the commission of any criminal offense." (§ 656.2, subd. (a)(1).) As this court recently recognized, section 656.2, subdivision (a)(1) articulates a "broad right of victims to present impact statements in juvenile court." (*In re O.F.* (March 13, 2026) ___ Cal.App.5th ___ [2026 WL 708930, p. *23].)

J.H. resists this conclusion by invoking section 875, subdivision (e)(1)(A) (section 875(e)(1)(A)), which identifies certain materials a court shall consider at a six-month review hearing. Although that provision contains no express prohibition on admitting victim impact statements, J.H. relies on the maxim *expressio unius est exclusio alterius*—"the expression of one thing in a statute ordinarily implies the exclusion of other things" (*In re J.W.* (2002) 29 Cal.4th 200, 209)—to argue the statute implicitly excludes all materials not specifically listed. In other words, the court must only consider "the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's

9

progress" at a six-month review hearing.[4]  (§ 875(e)(1)(A).)  As courts have repeatedly explained, the *expressio unius* canon is a guideline, not a rigid rule, and it " 'must yield' " where it would conflict with other indicia of legislative intent.  (*Brooks*, *supra*, 23 Cal.App.5th at p. 943.)  Critically, section 875(e)(1)(A) "must be read in harmony with, and through the lens of, the Constitution."  (*Brooks*, at pp. 943–944.)

Read in that light, J.H.'s proposed construction cannot be sustained. Both the Victims' Bill of Rights, as enshrined in the California Constitution, and section 656.2 affirmatively guarantee victims the right to provide impact statements in delinquency proceedings.  Interpreting section 875(e)(1)(A) to silently abrogate that right would contravene express public policy and legislative intent of ensuring that victims of crimes are entitled to be heard. Instead, the statutory scheme is best understood as permitting victim impact statements at six-month review hearings consistent with the overarching constitutional directive that victims be afforded a meaningful voice.  This construction accords with the settled principle that a constitutional provision is " ' "not to be interpreted according to narrow or supertechnical principles, but liberally and on broad general lines, so that it may accomplish in full measure the objects of its establishment and so carry out the great principles of government." ' "  (*People v. Giordano* (2007) 42 Cal.4th 644, 655.)

J.H.'s reliance on later language in section 656.2, subdivision (a)(1) does not alter this conclusion.  He contends section 656.2 is not at odds with section 875(e)(1)(A) because section 656.2 only applies to probation reports submitted at sections 706 and 707 hearings.  (See § 656.2, subd. (a)(1) ["If the

---

[4] J.H. also contrasts section 875(e)(1)(A) with section 706, which addresses disposition hearings and specifically identifies victim statements as "relevant and material evidence" the court may consider.

victim exercises the right to submit a victim impact statement to the probation officer, the probation officer is encouraged to include the statement in his or her social study submitted to the court pursuant to Section 706 and . . . Section 707."].)  But that interpretation cannot be reconciled with the statute's opening sentence, which extends the right to submit a victim impact statement to "all juvenile court hearings."  Construing the later language as a limitation would render that broad grant largely superfluous—an interpretation we must avoid.  (*Brooks*, *supra*, 23 Cal.App.5th at p. 943 [court should avoid constructions rendering statutory language mere surplusage].)  A more natural reading is that the statute describes one method of transmitting victim impact statements to the court for certain hearings, not the exclusive means of doing so.  Nothing in the statutory text suggests such statements may only be presented through probation reports or are barred from other delinquency hearings.  (See *In re O.F.*, *supra*, ___ Cal.App.5th ___ [2026 WL 708930, p. *23] [statutory language "in no way suggests the Legislature intended to give probation officers sole discretion to determine whether victim impact statements may be introduced."].)

In sum, the constitutional and statutory framework compel the same conclusion: the juvenile court properly allowed Officer Hidalgo to submit a victim impact statement at the six-month review hearing.

## III.  Section 875(e)(1)(A) Limits How Courts May Consider Victim Impact Statements

Although victims are entitled to submit impact statements at six-month review hearings, section 875(e)(1)(A) circumscribes the manner in which the juvenile courts may consider that evidence.  The statute defines the court's task narrowly: to "evaluate the ward's progress in relation to the rehabilitation plan" and, in light of that progress, determine whether a

modification of his or her baseline term of confinement or placement in a less restrictive program is warranted. (§ 875(e)(1)(A).) The inquiry is thus forward-looking and rehabilitative, not punitive.

The record demonstrates the court admirably adhered to that framework. The court expressly acknowledged both principles at play— recognizing and considering the relevance of the victim's ongoing impact while emphasizing that "six-month review hearings are supposed to solely be focused on the progress of the minor." The court reconciled these two considerations in a manner consistent with the statutory purpose, explaining that a minor's rehabilitation necessarily encompasses the development of empathy and an understanding of the consequences of his or her conduct. The court recognized, in that respect, the victim's continued experience of harm bore directly on J.H.'s rehabilitative progress, as it informed whether he had internalized the impact of his actions.

Having articulated that framework, the court proceeded to do what section 875(e)(1)(A) requires, namely, assess J.H.'s progress under his rehabilitation plan. The court identified both positive developments and ongoing concerns, ultimately concluding that J.H.'s continued "behavioral issues" reflected insufficient progress to justify a reduction in his baseline term. That determination rested on J.H.'s performance, not on any impermissible consideration of punishment.

Importantly, the court also delineated the limits of its reliance on the victim impact statement. It acknowledged that portions of the statement addressed punishment and sentencing considerations, but made clear those factors were not pertinent to the inquiry before it, which was confined to "assess[ing] [J.H.'s] progress and rehabilitation." In so doing, the court

12

ensured that the victim's statement informed, but did not displace, the statutory focus.

In limiting its consideration of the victim impact statement to those components relevant to J.H.'s rehabilitation, the court struck the appropriate balance. It permitted the victim to be heard, as required, while confining its consideration of that evidence to matters bearing on J.H.'s rehabilitation, as section 875(e)(1)(A) demands. On this record, we find no error.[5]

**DISPOSITION**

We affirm the order.

---

[5] Because the court did not err in either admitting the victim impact statement or the manner in which it considered the statement, we need not reach the parties' arguments regarding prejudice.

13

PETROU, J.

WE CONCUR:

FUJISAKI, Acting P. J.

RODRÍGUEZ, J.

A172657 / *In re J.H.*

14

Trial Court:          Contra Costa County Superior Court

Trial Judge:          Hon. Shara Beltramo

Counsel:

Violet Elizabeth Grayson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Michele J. Swanson, Supervising Deputy Attorney General, and Catherine A. Rivlin, Supervising Deputy Attorney General, for Plaintiff and Respondent.